11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

David
Lee Chambers 

Appellant

Vs.                   No.
11-03-00035-CR B
Appeal from Brown County

State
of Texas  

Appellee

 

The jury convicted David Lee Chambers of the state
jail felony offense of evading arrest. TEX. PENAL CODE ANN. ' 38.04(a) (Vernon 2003).  The trial court assessed punishment at 2
years in the State Jail Division of the Texas Department of Criminal
Justice.  We affirm.

                                                                  Issues
Presented

Section 38.04(a) of the Penal Code provides that A[a] person commits an offense if he
intentionally flees from a person he knows is a peace officer attempting
lawfully to arrest or detain him.@  The grand jury=s
indictment alleged that appellant Aintentionally
fle[d] from Mike Barr, a person the defendant knew was a peace officer who was
attempting lawfully to arrest or detain [him].@  At the time of the alleged incident, Reserve
Deputy Barr was a reserve deputy for the Brown County Sheriff=s Department.  In three points of error, appellant argues
that the evidence was legally insufficient to support findings:  (1) that Reserve Deputy Barr was a Apeace officer@
or (2) that appellant knew that Reserve Deputy Barr was a Apeace officer.@  Therefore, appellant asserts that the trial
court erred:  (1) in denying his motion for
instructed verdict, (2) in denying his motion for new trial, and (3) in
rendering a judgment of conviction against him. 

                                                                    The
Evidence








The State presented the following witnesses at
trial: (1) Reserve Deputy Barr; (2) Pete Bastardo, a Brown County Deputy; (3)
David Mercer, a Brown County Sergeant; (4) Leroy Polnick, a Texas Parks and
Wildlife Game Warden; (5) William L. Todson, a Department of Public Safety
Criminalist; (6) Delbert T. Amos, a Texas Commission on Law Enforcement Officer
Standards and Education Special Agent; and (7) Glenn Smith, Brown County
Sheriff. 

Reserve Deputy Barr testified that the incident
occurred during the night of November 25, 2001. 
At that time, Reserve Deputy Barr was employed as the Postmaster in May
and as a reserve deputy for the Brown County Sheriff=s
Department.  He was at home during the
night of November 25, 2001.  He said that
he heard a gunshot outside, about one-fourth mile to the east of his house.  He went outside to investigate.  He said that he got into his pickup; drove to
his gate; and then, as he was opening the gate, saw a red pickup pull over to
the side of the road near his neighbor=s
house.  He thought that the two people in
the pickup had been involved with the gunshot that he had heard. He believed
that the gunshot followed by the two men pulling the pickup over to the side of
the road presented suspicious circumstances. 
Reserve Deputy Barr testified that it was illegal to shoot a firearm
from a public road and that it would have been illegal to be hunting at that
time of day.  He also said that
discharging a firearm in close proximity to houses constitutes a dangerous
conduct offense.  Reserve Deputy Barr
informed the Brown County Sheriff=s
Department by radio that he had made a traffic stop. 

Reserve Deputy Barr walked up to the pickup.  He was shining a flashlight and was carrying
a gun.  He was concerned that the men in
the truck might have a gun.  Reserve
Deputy Barr testified that he told the driver: 
AI=m with the sheriff=s office.  I need to see some identification.@ 
Unknown to Reserve Deputy Barr at that time, appellant was the driver of
the pickup.  Appellant told Reserve
Deputy Barr that neither of them had a driver=s
license.  Reserve Deputy Barr said that
appellant and the passenger seemed nervous. 
The passenger said to Reserve Deputy Barr something to the effect of, AYeah, you know me.@ 
Reserve Deputy Barr said that, while he was walking back to his pickup
to get a pen, appellant drove off. 
Reserve Deputy Barr testified that he yelled:  AStop,
Police!@ and AHold it!@
but that appellant did not stop.  Reserve
Deputy Barr notified the sheriff=s
office. 








Reserve Deputy Barr followed appellant=s pickup.  Reserve Deputy Barr testified that he had his
emergency flashers on in his pickup and that he was close enough to appellant
for appellant to see the emergency flashers. 
For about the next hour, appellant led Reserve Deputy Barr and other law
enforcement personnel on a high speed chase, involving speeds up to 100 miles
per hour.  Reserve Deputy Barr said that
he followed appellant=s
pickup for about 50 miles. 

Deputy Bastardo, Sergeant Mercer, and Game Warden
Polnick were all involved to some extent in the chase.  Deputy Bastardo said that he positioned his
vehicle at a T-intersection and waited for appellant=s
pickup to approach.  Appellant drove by,
and Deputy Bastardo immediately got behind appellant.  Deputy Bastardo said that he turned on his
emergency lights and siren in an attempt to get appellant to stop.  Deputy Bastardo said that his emergency
lights would have been readily apparent to appellant.  Deputy Bastardo continued to follow appellant
for about an hour.  Sergeant Mercer
parked his vehicle in the road in front of appellant in an attempt to block
appellant. Sergeant Mercer had his emergency lights and siren going.  Appellant drove around Sergeant Mercer=s vehicle by driving in the ditch
beside the road.  Game Warden Polnick
testified that he parked his vehicle in the road in appellant=s path. 
He said that he had his blue and red emergency lights going.  He said that appellant swerved into the ditch
in an attempt to get by, but high-centered the pickup in the ditch.  Game Warden Polnick said that he was able to
block appellant in the ditch. 

Sergeant Mercer testified that he searched
appellant=s
pickup.  He found a bag containing a  white powdery substance and another bag
containing two pills.  He believed that
the white substance was a controlled substance. 
Sergeant Mercer said that he submitted the substances to the Department
of Public Safety in Abilene for testing. 

Criminalist Todson testified that he tested the
substances submitted by Deputy Mercer. 
He said that the white powdery substance contained methamphetamine and
that the pills were a dangerous drug B
Carisoprodol.    








The remainder of the evidence related to whether
Reserve Deputy Barr was a Apeace
officer.@  Special Agent Amos testified that Reserve
Deputy Barr did not have a permanent peace officer license.  He said that Reserve Deputy Barr had a
conditional reserve license.  Special Agent
Amos testified that county sheriffs determine the official duty capacities of
their reserve deputies.  He said that the
sheriffs determine whether to put their reserve deputies on active duty 24
hours a day, 7 days a week.  He also said
that sheriffs have the authority to establish a policy requiring their reserve
deputies to investigate suspicious circumstances. 

Sheriff Smith testified about his policies.  He said that his reserve deputies function as
peace officers 24 hours a day.  He said
that Reserve Deputy Barr was on active duty 24 hours a day, 7 days a week.  He also said that his reserve deputies and
regular peace officers have the same privileges and authority.  Sheriff Smith also said that his reserve
deputies are assigned to intervene when they see suspicious circumstances.  He testified further that, if his reserve
deputies see a crime or a suspicious act in progress, they have the authority
to act as any police officer would in that situation. 

Deputy Bastardo and Sergeant Mercer testified that
reserve deputies are on active duty at all times.  Reserve Deputy Barr testified that, as a
reserve deputy, he was on call 24 hours a day, 7 days a week.  He also testified that he was acting within
his authority as a reserve deputy at the time of the incident.  He said that he had been a reserve deputy
since 1979. 

   
                                                      Sufficiency
of the Evidence

To determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).  Appellant argues that Reserve Deputy Barr was
not a Apeace
officer@ as the
term is used in TEX. PENAL CODE ANN. '
38.04 (Vernon 2003).  The term Apeace officer@
is defined in the Penal Code as follows:

APeace
officer@ means a
person elected, employed, or appointed as a peace officer under Article 2.12,
Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other
law.   

 








TEX. PENAL CODE ANN. '
1.07(a)(36) (Vernon Supp. 2004).  TEX.
CODE CRIM. PRO. ANN. art. 2.12 (Vernon Supp. 2004) lists a number of categories
of Apeace officers.@  Reserve Deputy Barr did not fall within any
of the categories set forth in Article 2.12. 
Article 2.12(1) provides that:  A[T]hose reserve deputies who hold a
permanent peace officer license issued under Chapter 1701, Occupations Code@ are Apeace
officers.@  However, Reserve Deputy Barr did not hold a
permanent peace officer license.  TEX.
EDUC. CODE ANN. ''
51.212 & 51.214 (Vernon 1996 & Pamph. Supp. 2004) do not apply in this
case.  Therefore, the issue is whether
Reserve Deputy Barr was Aelected,
employed, or appointed as a peace officer under...other law.@

The definition of Apeace
officer@ set
forth in TEX. OCC. CODE ANN. '
1701.001 (Vernon Pamph. 2004) is similar to the definition set forth in Section
1.07(a)(36) of the Penal Code.  Section
1701.001(4) of the Occupations Code defines Apeace
officer@ as Aa person elected, employed, or
appointed as a peace officer under Article 2.12, Code of Criminal Procedure, or
other law.@  The State argues that Reserve Deputy Barr was
a Apeace officer@
under Section 85.004 of the Local Government Code.  See TEX. LOCAL GOV=T CODE ANN. '
85.004 (Vernon Supp. 2004).  Section
85.004 provides in relevant part:  

(a) The commissioners court of a county may
authorize the sheriff to appoint reserve deputy sheriffs.

     

(b) A reserve deputy serves at the discretion of
the sheriff and may be called into service if the sheriff considers it
necessary to have additional officers to preserve the peace and enforce the
law....A reserve deputy who is not a peace officer as described by Article
2.12, Code of Criminal Procedure, may act as a peace officer only during the
actual discharge of official duties.

 

(d) A reserve deputy on active duty at the call of
the sheriff and actively engaged in assigned duties has the same rights, privileges,
and duties as any other peace officer of the state.         

            

Thus, when a reserve deputy is (1) on active duty at the call of
the sheriff and (2) actively engaged in assigned duties, the reserve deputy has
the same rights, privileges, and duties as any other peace officer.  The inclusion of the phrase Aany other peace officer@ requires an interpretation of Section
85.004(d) that a reserve deputy on active duty at the call of the sheriff and
actively engaged in assigned duties is a Apeace
officer.@  Thus, Reserve Deputy Barr was a Apeace officer@
if, at the time of the incident, he was (1) on active duty at the call of the
sheriff and (2) actively engaged in assigned duties.








Agent Amos testified that county sheriffs can
authorize their reserve deputies to be active peace officers 24 hours a day, 7
days a week.  He also said that sheriffs
have the authority to set a policy that requires their reserve deputies to
investigate when they see something that they believe is suspicious.  Sheriff Smith has such policies.  His reserve deputies are on active duty 24
hours a day, 7 days a week, and his reserve deputies are assigned to intervene
when they see something that is suspicious. 
At the time of the incident, Reserve Deputy Barr was investigating
something that he thought was suspicious: a gunshot followed by the pickup
stopping on the side of the road.  He was
discharging his official duty of intervening when he saw something that was
suspicious.  The above evidence supports
the conclusion that, at the time of the incident, Reserve Deputy Barr (1) was
on active duty under Sheriff Smith=s
policy that reserve deputies are on active duty 24 hours a day, 7 days a week;
and (2) was actively engaged in his assigned duty of investigating suspicious
circumstances.  Therefore, the evidence
was legally sufficient to support a finding that Reserve Deputy Barr was a Apeace officer@
under Section 85.004 of the Local Government Code. 

Appellant also argues that the evidence was
legally insufficient to support the finding that he knew Reserve Deputy Barr
was a peace officer.  Reserve Deputy Barr
told appellant:  AI=m with the sheriff=s office.  I need to see some identification.@ 
Appellant did not ask to see Reserve Deputy Barr=s
badge or identification.  The passenger
said:  AYeah,
you know me.@  When appellant drove off, Reserve Deputy Barr
yelled:  AStop,
Police!@ and AHold it!@  Reserve Deputy Barr got behind appellant,
turned on the emergency flashers in his pickup, and continued to follow
appellant for about 50 miles.  Deputy
Bastardo and Sergeant Mercer had their emergency lights and sirens on during
the chase, but appellant did not stop. 
Appellant drove around Sergeant Mercer=s
vehicle as Sergeant Mercer attempted to block the road.  Game Warden Polnick also had his emergency
lights on.  Viewing the evidence in the
light most favorable to the verdict, we find that a rational trier of fact
could have found that appellant knew that Reserve Deputy Barr was a peace
officer.

Appellant=s
points of error are overruled.

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.       

                                                                                    

TERRY McCALL

JUSTICE

March 4, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.